THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| KAY "KITTY" STONEBURNER and CORY ABDALLA,<br><br>Plaintiffs,<br><br>v.<br><br>RSUI INDEMNITY COMPANY, a New Hampshire Corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [23] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:21-cv-00023-DBB<br><br>District Judge David Barlow |

Plaintiffs Kay Stoneburner and Cory Abdalla brought this action against Defendant RSUI Indemnity Company for breach of contract, bad faith, and a declaratory judgment regarding RSUI's refusal to defend the plaintiffs in an underlying lawsuit.[1] RSUI moved for summary judgment.[2] Because RSUI is entitled to judgment as a matter of law, RSUI's motion for summary judgment is GRANTED.

## BACKGROUND

RSUI is an insurance company that provides directors and officers liability insurance to entities, including Union Square Owner's Association ("the Association").[3] On October 23, 2017, 20 plaintiffs filed suit in Utah state court against defendants that included Stoneburner and Abdalla, initiating the underlying action.[4] At least five of the underlying plaintiffs, Jan Ferraris,

---

[1] *See* Complaint at ¶¶ 21–36, ECF No. 3-1.
[2] *See* Defendant RSUI Indemnity Company's Motion for Summary Judgment ("Motion for Summary Judgment"), ECF No. 23, filed Oct. 14, 2021.
[3] Directors and Officers Liability Policy Declarations ("Policy") at 1, ECF No. 23-2.
[4] *Raeburn v. Abdalla* Initial Complaint at 1–2, ECF No. 23-3.

Stephen Allis, Amy Anderson, Charles Raeburn, and Donald Porteous, constitute "Insureds" under RSUI's insurance policy because they are "past or present officers, directors, trustees, employees, or committee members of a duly constituted committee of the Association."[5] Stoneburner and Abdalla are also "Insureds" under RSUI's policy because they are members of the Association's management committee.[6] On November 15, 2017, the plaintiffs in the underlying suit filed a first amended complaint which added an additional plaintiff and defendant.[7]

RSUI denied liability insurance coverage for the underlying lawsuit on December 1, 2017.[8] In its denial letter, RSUI explained that the policy's "insured versus insured" exclusion precluded coverage because the underlying suit was brought by "insureds" under the policy (including Ferraris, Allis, Anderson, Raeburn, and Porteous) against other "insureds" (including Stoneburner and Abdalla).[9]

On August 3, 2018, the underlying plaintiffs filed a second amended complaint.[10] On March 20, 2019, former counsel for Stoneburner and Abdalla emailed RSUI to confirm the status of liability coverage for Stoneburner in the underlying suit.[11] RSUI replied that its position regarding coverage remained as set forth in its denial letter from December 1, 2017.[12] On May 15, 2020, counsel for Stoneburner in the underlying suit wrote a letter to John Curtis, the court-

---

[5] Plaintiffs' Responses to Defendant's First Set of Interrogatories at 9, ECF No. 23-11.
[6] *See Raeburn v. Abdalla* Initial Complaint at ¶¶ 8–9.
[7] *See Raeburn v. Abdalla* First Amended Complaint, ECF No. 23-4.
[8] Denial Letter at 2, ECF No. 23-7.
[9] *Id.* at 3.
[10] *See Raeburn v. Abdalla* Second Amended Complaint, ECF No. 23-5.
[11] ECF No. 23-8 at 3.
[12] *Id.* at 1.

appointed receiver for the Association in the underlying lawsuit.[13] In the letter, Stoneburner's counsel recommended that Curtis "reach out to [underlying] Plaintiffs' counsel to discuss the insurance coverage situation and urge them to file another amended complaint to re-allege their claims to trigger and/or re-trigger RSUI's duty to provide insurance coverage for the claims."[14] Stoneburner's counsel stated that he "[did] not know why [underlying plaintiffs] would have intentionally alleged claims to avoid the coverage . . . ."[15]

On September 30, 2021, the underlying plaintiffs filed a third amended complaint, which is currently the operative complaint in the underlying suit.[16] The third amended complaint withdrew previously derivative allegations and instead asserted direct claims by the Association, which is also an Insured under the policy.[17] The third amended complaint also distinguished between "Individual Plaintiffs" and "the Association"—any claims against individual underlying defendants such as Stoneburner and Abdalla are now only brought by the Association, not the underlying individual plaintiffs.[18] Each version of the complaint in the underlying suit included both insured and non-insured plaintiffs.[19]

Stoneburner and Abdalla brought this suit against RSUI on November 30, 2020, seeking damages for breach of contract, insurance bad faith, and a declaratory judgment that RSUI is

---

[13] *See* ECF No. 23-10.
[14] *Id.* at 4.
[15] *Id.*
[16] *See Raeburn v. Abdalla* Third Amended Complaint, ECF No. 23-6.
[17] *Id.*
[18] *Id.* at ¶¶ 336–87.
[19] *See Raeburn v. Abdalla* Initial Complaint at 1–2; *Raeburn v. Abdalla* Amended Complaint at 1–2; *Raeburn v. Abdalla* Second Amended Complaint at 1–2; *Raeburn v. Abdalla* Third Amended Complaint at 1–2.

required to provide them with a defense and coverage in the underlying suit.[20] On October 14, 2021, RSUI moved for summary judgment.[21]

## STANDARD

A court grants summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[22] Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of any party."[23] The moving party is also entitled to summary judgment if "the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[24] Both evidence and reasonable inferences drawn from that evidence are construed in the light most favorable to the nonmovant.[25]

## DISCUSSION

Both sides agree that there are no disputed issues of material fact and that the only matter is for the court to interpret the relevant policy language.[26] The court will first consider whether RSUI is entitled to summary judgment on Stoneburner and Abdalla's first and third claims based on the insurance policy and then consider whether RSUI is entitled to summary judgment on Stoneburner and Abdalla's bad-faith claim.

---

[20] Complaint at ¶¶ 21–36.
[21] *See* Motion for Summary Judgment at 1.
[22] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[25] *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).
[26] Plaintiffs' Response in Opposition to Motion for Summary Judgment ("Opposition") at 3, ECF No. 29, filed Nov. 19, 2021.

I. **RSUI is entitled to summary judgment on Stoneburner and Abdalla's first and third claims because the plain language of the insurance policy precludes coverage.**

Three provisions of RSUI's directors and officers liability policy are primarily at issue here. First, the policy includes the following "insured versus insured" exclusion:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured: . . . Brought by or on behalf of any Insured, except:
>
> a. A derivative action brought by or made on behalf, or in the name or right of, the Insured Organization, if such action is brought and maintained independently of, and without assistance, participation or intervention of any insured;
>
> b. An Employment Practices Claim brought by an Insured Person;
>
> c. Any Claim brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such Insured Organization, in or after any bankruptcy proceeding by or against an Insured Organization;
>
> d. Any claim brought by any past director, officer, trustee, manager or equivalent executives of the Insured Organization who have not served as a director, officer, trustee, manager or equivalent executive for at least five (5) years prior to the date such Claim is first made, and if the Claim is brought and maintained totally independent of and without the solicitation, assistance, active participation or intervention of the Insured Organization or any Insured Person not described in this paragraph 7.d; or
>
> e. Any instigation of or involvement in any Claim, or solicitation, assistance, active participation or intervention by any Insured whistleblower under Section 806 of the Sarbanes-Oxley Act of 2002 or any rule or regulation promulgated thereunder, or any similar whistleblower statute, rule or regulation under any other federal or state law.[27]

Next, the policy defines a "claim" as:

1. A written demand for monetary or non-monetary relief;

2. A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

    a. Receipt or service of a complaint or similar pleading;

---

[27] Policy at 28, 29 (emphasis omitted).

      b. Return of an indictment (in the case of a criminal proceeding); or

      c. Receipt of a notice of charges;

3. An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured.[28]

Finally, the policy includes an allocation clause that states:

> If both Loss covered under this policy and Loss not covered under this policy are jointly incurred either because a Claim includes both covered and non-covered matters or covered and non-covered causes of action or because a Claim is made against both an Insured and any other parties not insured by this policy, then the Insured and the Insurer shall use their best efforts to fairly and reasonably allocate payment under this policy between covered Loss and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.[29]

RSUI argues that the underlying suit is a "claim" under the policy that is made against an insured and brought by, at least in part, other insureds and that thus the plain language of the insured versus insured ("IVI") exclusion precludes coverage for the entire underlying suit.[30]

In Utah, insurance policies are generally interpreted according to the rules of contract interpretation.[31] "Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole."[32] "Policy terms are harmonized with the policy as a whole, and all provisions should be given effect if possible."[33] In general, insurers may exclude from coverage certain losses "by using language which clearly and unmistakably

---

[28] *Id.* at 25–26.
[29] *Id.* at 31.
[30] Motion for Summary Judgment at 12–13.
[31] *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999).
[32] *Id.*
[33] *Id.*

6

communicates to the insured the specific circumstances under which the expected coverage will not be provided."[34]

When interpreting an insurance policy, "any ambiguity or uncertainty in the language of [the policy] must be resolved in favor of coverage."[35] Ambiguity exists if a provision of a contract "is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies."[36] A proposed interpretation "must be plausible and reasonable in light of the language used."[37] "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[38]

Stoneburner and Abdalla make two primary arguments as to why the IVI exclusion does not completely bar coverage for losses related to the underlying suit. First, Stoneburner and Abdalla contend that the "key to determining whether [the IVI Exclusion] applies to bar coverage for Plaintiffs in the Underlying Lawsuit . . . is how the Policy defines "Claim."[39] They argue that, based on the definition of "claim" in the insurance policy "[a] cause of action in a complaint is a written demand for monetary or non-monetary relief and thus constitutes a 'Claim,'" and therefore "a civil lawsuit is a Claim in which one or more Claims in the form of causes of action are asserted."[40] Accordingly, RSUI was obligated to defend at least some of the

---

[34] *Id.* (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1274, 1275 (Utah 1993).
[35] *Doctors' Co. v. Drezga*, 218 P.3d 598, 603 (2009) (quoting *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988)).
[36] *Id.* (quoting *WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1145 (Utah 2002))
[37] *S.W. Energy Corp. v. Con'l Ins. Co.*, 974 P.2d 1239, 1242 (Utah 1999) (quoting *First Am. Title Ins. Co. v. J.B. Ranch*, 966 P.2d 834, 837 (Utah 1998)).
[38] *WebBank*, 54 P.3d at 1145.
[39] Opposition at 6.
[40] *Id.*

underlying lawsuit because the underlying suit contained causes of action that were brought by non-insured parties which were "claims" under the terms of the policy.

But Stoneburner and Abdalla's proposed interpretation is not supported by the language of the policy. Part one of the definition of "Claim" in the insurance policy is "[a] written demand for monetary or non-monetary relief" and part two of the definition is "[a] civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by . . . [r]eceipt or service of a complaint or similar pleading . . . ."[41] The language of the policy plainly defines an entire civil proceeding as a single claim. Furthermore, a civil proceeding necessarily will include at least one "written demand for monetary or non-monetary relief"; thus, if Stoneburner and Abdalla's proposed interpretation were correct, part two of the definition would be mere surplusage. This interpretation would contravene the Utah Supreme Court's directive that "all provisions [of an insurance policy] should be given effect if possible."[42] The only way for the second part of the definition to be given effect is for a written demand to mean something different than a civil proceeding.

Additionally, a plain reading of the three claim definitions suggests that they are separate. The first claim definition deals with written demands.[43] The second claim definition deals with various legal proceedings, whether civil, criminal, administrative, regulatory, or arbitrative.[44] The third claim definition deals with certain investigations.[45] Stoneburner and Abdalla offer no good reason to interpret a legal proceeding as merely an aggregation of numerous discrete

---

[41] Policy at 25–26.
[42] *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999).
[43] Policy at 25.
[44] *Id.* at 26.
[45] *Id.*

written demands, so their proposed reading is not "plausible and reasonable in light of the language used."[46] They also cite no case that supports their proposed interpretation, much less a binding Utah case.

Having concluded that the entire underlying lawsuit constitutes one "claim" under the insurance policy, the plain language of the policy's IVI exclusion precludes coverage for the underlying suit. The IVI exclusion bars coverage for "any Claim made against any Insured . . . [b]rought by or on behalf of *any Insured* . . . ."[47] Stoneburner and Abdalla are both "Insureds," and the underlying lawsuit here is brought by, among others, Jan Ferraris, Stephen Allis, Amy Anderson, Charles Raeburn, and Donald Porteous, who Stoneburner and Abdalla admit are "Insureds" under the policy.[48] So the claim at issue (here, an underlying civil proceeding) is brought not just by "any insured," but by many insureds. According to Stoneburner and Abdalla's own reasoning, the definition of claim is dispositive, because "[b]y its plain language, [the IVI exclusion] precludes coverage for 'any Claim' that is asserted by a party who qualifies as an Insured."[49] Because Stoneburner and Abdalla concede that coverage for them depends on the meaning of "Claim," and because "Claim" in the context of this case is defined as an "civil proceeding," not some portion or part thereof, the plain language of the IVI exclusion unambiguously precludes coverage for the underlying suit.[50] Put simply, Stoneburner and Abdalla's own argument compels this result.

---

[46] *S.W. Energy Corp. v. Con'l Ins. Co.*, 974 P.2d 1239, 1242 (Utah 1999) (quoting *First Am. Title Ins. Co. v. J.B. Ranch*, 966 P.2d 834, 837 (Utah 1998)).
[47] Policy at 28–29 (emphasis added).
[48] Plaintiffs' Responses to Defendant's First Set of Interrogatories at 9.
[49] Opposition at 6.
[50] *See Jerry's Enterprises, Inc. v. U.S. Specialty Insurance Company*, 845 F.3d 883, 887–88 (8th Cir. 2017) (finding nearly identical IVI exclusion clause "contains no ambiguity" with "no room under the language of the exclusion clause to apply the clause to some parts of a lawsuit but not others").

Stoneburner and Abdalla's analysis of the "related acts" provision of the policy does not change this conclusion.[51] The related acts provision states:

> All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim for all purposes under this policy . . . .[52]

Although Stoneburner and RSUI argue that "the assertion of Condition 3 or 'related acts' provision as a basis for refusing to consider the claims individually requires RSUI to plug in the *first* definition of Claim,"[53] RSUI did not rely on the related acts provision in denying coverage—it only cited to the IVI exclusion.[54] Furthermore, the cases that Stoneburner and Abdalla cite are inapposite. In *Carolina Casualty Insurance Co. v. Omeros Corp.*, the Western District of Washington held that two "wrongful related acts" were a single claim for the purposes of determining if the claim was made within the policy period, but "not a single claim for purposes of applying policy exclusions that are unrelated to the claims-made nature of the policy."[55] But in *Omeros*, the related-acts provision appeared in a section devoted "exclusively to explaining an insured's obligation to give notice of claims and potential claims and to determining the claims-made date for multiple related claims."[56] In contrast, the related-acts provision here applies to "all purposes under th[e] policy" and RSUI did not rely on the related

---

[51] *See* Opposition at 8.
[52] Policy at 30.
[53] Opposition at 8.
[54] Denial letter at 2–3.
[55] *Carolina Cas. Ins. Co. v. Omeros Corp.*, No. C12-287RAJ, 2013 WL 5530588, at *4 (W.D. Wash. Mar. 11, 2013).
[56] *Id.*

10

acts provision when it denied coverage for the underlying suit—it considered the entire lawsuit to be one claim.[57]

The remainder of Stoneburner and Abdalla's response asserts that "causes of action must be analyzed separately" and that "when insured and non-insured plaintiffs assert multiple causes of action against the same defendant(s) in the same lawsuit and the D&O policy contains an allocation clause, any IVI exclusion will not operate to bar [coverage for] the causes of action of the non-insureds."[58] Indeed, Stoneburner and Abdalla repeatedly say that RSUI has "lumped together" all of the "causes of action," that "causes of action must be analyzed separately," and that "any IVI exclusion will not operate to bar the causes of action of the non-insureds."[59] They conclude that "[t]he fact that causes of action are simultaneously asserted by Insureds does not take the covered claims out of coverage simply because they are pleaded in the same complaint."[60]

This repeated theme that the "causes of action" and "claims" must be parsed and separated is not borne out by the policy language and facts of this case. The argument about separate causes of action is unavailing because, over the course of the four complaints in the underlying suit at issue, the non-insured plaintiffs never asserted a separate cause of action. In the first two complaints, every cause of action is brought by every plaintiff collectively,

---

[57] Policy at 30. Stoneburner and Abdallas's citation to *Alcano Technologies v. Carolina Casualty Insurance Co.* is also inapposite because in that case the insurer argued that the related-acts provision of the policy barred coverage for a claim that was previously excluded from coverage by an IVI exclusion and subsequently amended to be brought only by non-insured plaintiffs. No. CV-04-789-PHX-DGC, 2005 WL 6242303, at *1–3 (D. Ariz. May 19, 2005). Here, RSUI did not rely on the related-acts provision in denying coverage under the IVI exclusion, since it considered the entire lawsuit to be one claim. *See* Denial Letter at 2–3.
[58] Opposition at 9, 13–14.
[59] *Id.* at 7, 13-14.
[60] *Id.* at 15.

including both insureds and non-insureds.[61] In the next two complaints, each cause of action asserted against Stoneburner and Abdalla is brought only by the Association, an insured.[62] At no point in the underlying suit was a "cause of action" brought against Stoneburner and Abdalla exclusively by a non-insured. There simply are no separate causes of action here.

The "covered claims" argument fares no better, for the reasons discussed earlier. In the policy, a "claim" is a term of art which, under the facts of this case, means a "civil proceeding."[63] When Stoneburner and Abdalla argue that "the covered claims" do not lose coverage "simply because they are pleaded the same complaint," they are missing the definitional point: under the terms of the policy, the case itself (a "civil proceeding") *is* the claim.

In short, the court must interpret the policy language based on the facts before it, not a hypothetical. The court will not carve apart causes of action which the underlying plaintiffs, who are the masters of their complaint, have pleaded jointly. The allocation clause at issue applies if "a Claim [here, a civil proceeding] includes both . . . covered and non-covered causes of action."[64] As noted above, every cause of action in every version of the complaint in the underlying civil proceeding was brought by insureds, often together with non-insureds. Based on the record here, there are no separate covered causes of action, nor are there separate claims.

Both parties also discuss a number of cases in various courts that have found that allocation clauses of various kinds either did or did not result in partial coverage for the defendant insureds. For example, in *Marbella Condominium Association v. RSUI Indemnity*

---

[61] *Raeburn v. Abdalla* Initial Complaint at 29–41; *Raeburn v. Abdalla* First Amended Complaint at 29–41.
[62] *Raeburn v. Abdalla* Second Amended Complaint at 72–79; *Raeburn v. Abdalla* Third Amended Complaint at 81–91.
[63] Policy at 25–26.
[64] Policy at 31.

*Co.*,⁶⁵ the Southern District of Florida considered a policy with nearly identical language to the policy here. The court found that:

> [F]rom its inception, the Underlying Action involved claims by both an insured (Leone) and an individual not insured under the Policy (Field), and was therefore not covered from its inception. As a result, the Insured v. Insured exclusion in this case operates to bar coverage for the entire Underlying Action. . . . the allocation provision in the Policy does not apply since the duty to defend was not triggered.⁶⁶

*Marbella* is similar to the case here; not only do the cases involve nearly identical policies (and one of the same parties), but the causes of action asserted in each underlying action were brought collectively by insured and non-insured plaintiffs and the causes of action stemmed from the same facts.⁶⁷ The Southern District of Florida reached a similar result in *Powersports Inc. v. Royal & Sunalliance Insurance Company*.⁶⁸ There, the court considered an almost identical allocation clause and found that: "Allocation clauses only become relevant in the event that a loss involves both covered and uncovered claims. . . . [T]his action involves uncovered claims only, the allocation question is moot."⁶⁹ The court concluded that "[n]o construction of the [policy] language can support PowerSports' position that claims brought by uninsured plaintiffs are covered despite the fact that insured plaintiffs are also parties in the same action."⁷⁰ *Powersports* is instructive here because, in this case, the underlying suit never involved covered causes of action but instead was not covered in its entirety from its inception. Like in

---

⁶⁵ No. 16-cv-80987-BLOOM/Valle, 2017 WL 395301 (S.D. Fla. Jan. 30, 2017).
⁶⁶ *Id.* at *4.
⁶⁷ *See id.*
⁶⁸ 307 F. Supp. 2d. 1355 (S.D. Fla. 2004).
⁶⁹ *Id.* at 1362.
⁷⁰ *Id.*

*Powersports*, the entirety of the underlying suit is barred from coverage, regardless of the presence of an allocation clause.[71]

Other courts have reached a different conclusion. For example, in *Miller v. Saint Paul Mercury Insurance Co.*, the Seventh Circuit found that "[t]he allocation clause in the St. Paul policy leads to the proper result: claims brought by or on behalf of insureds are excluded, while those brought by non-insureds are not."[72] The court reasoned that if it barred coverage for a lawsuit based on the presence of a single insured it would "invite arbitrary results depending on whether many people with similar claims file one consolidated lawsuit or many separate lawsuits."[73] The court understandably was concerned that such a rule would bar coverage of "an entire lawsuit brought by 99 non-insured plaintiffs and just one insured plaintiff" and stated that "[c]ourts are hesitant to interpret contracts in ways that encourage an inefficient multiplication of parallel lawsuits."[74] Stoneburner and Abdalla argue that, under the reasoning of *Miller*, "the Policy's allocation clause provides for covered and uncovered claims to be separated and RSUI's obligations limited to the former . . . ."[75]

*Miller* is inapposite here for two reasons. First, the court in *Miller* was concerned with hypotheticals that are not before this court. *Miller* warned of the possibility of an IVI exclusion completely barring coverage for an entire lawsuit brought by 99 non-insureds and one insured or a lawsuit in which an insured was collusively added as a plaintiff.[76] Neither of those concerns are

---

[71] Additionally, the Sixth Circuit recently affirmed a district court's order dismissing a case on the grounds that an IVI exclusion barred coverage for an underlying suit with insured and non-insured plaintiffs. *See Tartar v. Navigators Ins. Co.*, No. 21-5129, 2021 WL 4950375, at *3 (6th Cir. Oct. 25, 2021) (unpublished).
[72] *Miller v. St. Paul Mercury Ins. Co.*, 683 F.3d 871, 879 (7th Cir. 2012).
[73] *Id.* at 875.
[74] *Id.*
[75] Opposition at 15.
[76] *Miller*, 683 F.3d at 875.

14

present in this case. Here, the underlying suit is one in which, from the onset of the case, a significant mix of insureds and non-insureds collectively asserted the same causes of action that arose from the same operative facts.[77]

Second, the *Miller* court was concerned with public policy considerations that are not at play here. There, the court was "hesitant to interpret contracts in ways that encourage an inefficient multiplication of parallel lawsuits."[78] But Utah law does not direct this court to consider such external policy considerations in the interpretation of an insurance policy—the Utah Supreme Court instructs this court to "first look at the plain language [of the contract] to determine the parties' meaning and intent."[79] Having determined that the plain language of the insurance policy unambiguously bars coverage for the entirety of the underlying suit, the court does not consider efficiency or other policy considerations that do not alter the meaning of the policy's terms.

Stoneburner and Abdalla also cite to *Level 3 Communications, Inc. v. Federal Insurance Co.* and *Federal Insurance Co. v. Infoglide Corp.*[80] Both these cases were predecessors to *Miller* that relied on similar reasoning in finding that an insurance policy with an allocation clause was ambiguous when applied to an underlying suit with both insured and non-insured plaintiffs. Specifically, the court in *Level 3* was concerned with the "truly whacky result" of an IVI

---

[77] *See Raeburn v. Abdalla* Initial Complaint at 29–41; *Raeburn v. Abdalla* First Amended Complaint at 29–41; *Raeburn v. Abdalla* Second Amended Complaint at 72–79; *Raeburn v. Abdalla* Third Amended Complaint at 81–91. Additionally, Stoneburner and Abdalla also concede that one of the key plaintiffs, perhaps even the lead plaintiff, is an insured: the Porteous Group is "an informal way of referring to the group of unit owners led by Don Porteous who opposed the Management Committee during the timeframe implicated by the Underlying Lawsuit." Motion for Summary Judgment at 9 (quoting Stoneburner and Abdalla's response to Interrogatory No. 12).
[78] *Miller*, 683 F.3d at 875.
[79] *Brady v. Park*, 445 P.3d 395, 407 (Utah 2019) (alteration in original).
[80] *Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 168 F.3d 956, 960 (7th Cir. 1999); *Fed. Ins. Co. v. Infoglide Corp.*, No. A-05-CA-189-AWA, 2006 WL 2050694, at *11 (W.D. Tex. July 19, 2006).

exclusion precluding coverage for a suit in which an insured is an unnamed class member in a securities class action.[81] But, as outlined above, this situation is not present here and the court will not reach policy considerations when the plain language of the contract is clear. In *Infoglide*, the Western District of Texas found *Level 3* persuasive and adopted its reasoning without much elaboration.[82] Stoneburner and Abdalla also cite *Megavail v. Illinois Union Ins. Co.*, which found that an IVI exclusion did not bar coverage for an underlying suit with some insured plaintiffs because Oregon law directed that "if any allegations of the complaint, without amendment, could impose liability, the insurance company must defend, even if the complaint contains coverage outside the scope of coverage."[83] Stoneburner and Abdalla have not argued that Utah law includes any such mandate.

In sum, a civil proceeding is a single claim under the insurance policy here, and the IVI exclusion precludes coverage for any claim brought by *any* insured—the policy bars coverage for the entire underlying suit that was brought by insured plaintiffs, even though non-insured plaintiffs are part of the same lawsuit, which is a single claim under this policy. Based on the arguments made by Stoneburner and Abdalla, the court cannot find that a single civil proceeding is actually an aggregation of numerous discrete written demands, that the related acts clause applies, or that the allocation clause in this policy changes the result. Summary judgment is granted to RSUI on Stoneburner and Abdalla's first and third claims.

---

[81] *Level 3*, 168 F.3d at 959.
[82] *Infoglide*, 2006 WL 2050694, at *6 (adopting the reasoning of *Level 3* "[g]iven the similarities between this case and Level 3, including the fact that the identical policy language is at issue . . . .").
[83] *Megavail v. Ill. Union Ins. Co.*, Civil No. 05-1374-AS, 2006 WL 2045862, at *2 (D. Or. July 19, 2006).

## II. RSUI is entitled to summary judgment on Stoneburner and Abdalla's bad-faith claim.

Having concluded that RSUI is entitled to summary judgment on Stoneburner and Abdalla's first and third claims, the court next turns to their bad-faith claim. Given that RSUI's denial of coverage was proper, RSUI is also entitled to summary judgment on Stoneburner and Abdalla's bad-faith claim.[84] A bad-faith claim cannot be sustained if an insured's claim is "fairly debatable"[85]—having determined that Stoneburner and Abdalla's insurance claim was properly denied, their bad-faith claim must also fail. Summary judgment is granted to RSUI on Stoneburner and RSUI's bad-faith claim.

## ORDER

Because RSUI is entitled to judgment as a matter of law, its motion for summary judgment is GRANTED.

Signed April 11, 2022.

BY THE COURT

_____
David Barlow
United States District Judge

---

[84] *See S.W. Energy Corp. v. Cont'l Ins. Co.*, 974 P.2d 1239, 1243 (Utah 1999).
[85] *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 464 (Utah 1996).